## DUANE BALLARD, Appellant, v. JESSE D. CARR, Respondent.

### No. 2780; November 29, 1871.

**Attorney—Duty in Earning Contingent Fee.**—An attorney to whom a cause is intrusted must, in order to become entitled to benefits promised him by his client in the event of success in his efforts, watch the progress of the action and keep himself in a position to perform any service which the exigency of the cause may demand.

**Specific Performance—Discretion.**—A Decree for Specific Performance is always more or less within the discretion of the court. It may either be refused, it being deemed inequitable or against good conscience to enforce the contract, or it may be granted on such terms and subject to such conditions as may be just.

**Specific Performance—Amendment of Answer.**—In a suit for the specific performance of a contract between an attorney and his client whereby the former was to have land conveyed him by the latter in return for future services successfully performed, the defendant should be allowed to amend his answer so as to have it show omissions by the attorney putting the defendant to expense, the reimbursing him for which ought to be attached as a condition to any decree the plaintiff might be given.

**Attorney—Suit for Services Under Contract Contra Bonos Mores.**—In an action on an express contract for an attorney's compensation, the client is estopped to defend on the ground that the services contemplated by the contract were contra bonos mores.

APPEAL from Fifteenth Judicial District, San Francisco County.

H. T. Crane for appellant; W. H. Patterson for respondent.

See Ballard v. Carr, 48 Cal. 74.

CROCKETT, J.—At the date of the contract between the defendant and Hartman a decree had been entered confirming the title of the claimant in the case of Larkin v. The United States, and a motion had been made by the United States district attorney to open the decree, on the ground that the pretended grant under which Larkin claimed was a forgery. This motion was pending and undecided when the defendant succeeded to Larkin's interest, and when the contract between

the defendant and Hartman was entered into. The substance of the contract was, that Hartman was retained as the attorney of the defendant, to procure an order or decree of the United States district court, "making the decree final in said court which has already been entered up in said case," "or to procure the dismissal of any appeal to the supreme court of the United States, that may be taken therein by the said United States." Hartman, on his part, agreed "to do and perform the services above mentioned and set forth"; in consideration of which the defendant agreed, "that so soon as the above services are performed," he would convey to Hartman two undivided leagues of the land. The motion to open the decree was denied, and the decree became final in the district court; and no appeal has been taken to the supreme court of the United States, though more than five years have elapsed from the date of the decree. This action is brought by the plaintiffs, as assignees of Hartman, to compel a specific performance of the contract for the conveyance of the two leagues of land. The defense is: 1st. That Hartman did not perform the service for which he stipulated, and did not procure the decree of the United States district court to be made final; but, on the contrary, neglected to give proper attention to the case, in consequence of which the defendant was compelled to employ other counsel at a great expense; 2d. That the contract is void for want of mutuality; 3d. That the pretended grant from the Mexican government was a forgery, which fact was known to Hartman when he entered into the contract; and that he entered into it with the intent "to conceal" from the government of the United States and its officials the fact that said grant was forged and simulated; and that the contract was therefore contra bonos mores and void.

Judgment was entered for the defendant and the plaintiffs appeal, both from the judgment and from the order denying their motion for a new trial.

I discover no material conflict in the evidence on any point in the cause. The facts appear to be, that the motion to open the decree was not brought on for hearing until October, 1863, on which occasion Hartman was present and argued the motion orally, and also filed a written brief. The matter was taken under advisement by the court, and Hartman

was soon after called to Washington on professional business, where he remained for some months. During his absence, in March, 1864, the court, of its own motion, ordered a reargument of the motion to open the decree and fixed the sixth day of the following June for the argument. On the 30th of April, the defendant wrote to Hartman at Washington, notifying him of these proceedings, and informing him that he had retained Mr. Patterson to argue the cause. Hartman did not return to California until after the day appointed for the argument, and Patterson argued the motion orally for the defendant, and also filed a written brief, for which service he was afterward paid by the defendant the sum of five hundred dollars. The court again took the motion under advisement; but did not decide it until August, 1865, when it was denied, and the decree became final. It further appears that after the reargument, and whilst the motion was under advisement, the defendant, in a letter to Hartman, who was still at Washington, requested him to procure a copy of a recent decision of the supreme court, which was supposed to have some bearing on the question, to be forwarded to the judge of the district court, and also to use his efforts to procure an order from the attorney general, directing a dismissal of the motion. Hartman procured a copy of the decision referred to and delivered it to the judge, before the motion was decided; and also endeavored, but without success, to procure an order from the attorney general, dismissing the motion. After the motion was denied, and there had been an official survey of the land, Hartman requested a conveyance of the two leagues; but the defendant declined to make the conveyance at that time; stating, as he testifies, that as he interpreted the contract, Hartman would not be entitled to the conveyance until the patent issued. These being the facts, it is clear that Hartman did not strictly and fully perform his duty as the attorney in the case. It was his duty as an attorney to watch the progress of the action and to keep himself in a position to perform any service which the exigency of the case might demand. His only omission, however, was his failure to be present at and to participate in the reargument of the motion. If he had participated in this argument, there could have been no pretense that he had not fully performed the contract on his part. It

will be observed, however, that the ultimate fact, on which his right to a conveyance of the two leagues was to depend, was the procuring of an order making the decree final, or the dismissal of the appeal, if one should be taken by the United States. There has been no appeal, and the decree has become final. To what extent the services rendered by Hartman contributed toward the result, it is impossible to ascertain. For aught that appears, the argument made by him on the first hearing of the motion may finally have prevailed, and induced the court to deny the motion; or possibly the decision of the supreme court, furnished by him after the argument, may materially have influenced the court. The result which he was employed to secure was obtained, to wit, the denial of the motion, whereby the decree became final; but whether this result was due solely to his efforts, or to the conjoint efforts of himself and Patterson, or to those of Patterson alone, it is impossible, in the nature of the case, to determine. But it would have been equally so if Hartman had been present and participated in the reargument. The defendant had the right to employ additional counsel, even though Hartman had been present, using all proper effort to procure a denial of the motion. In that event it would have been fruitless to inquire to what extent the mind of the judge was influenced by the argument of Hartman, and to what extent by that of Patterson. Hartman's rights could not have been made to depend upon any such subtle inquiry, or nice analysis of the mental operation of the judge who decided the motion. But if such an inquiry would not have been permissible, in case Hartman had participated in the reargument, it is equally inadmissible as the case stands, Hartman having made an oral argument and filed a brief on the motion, and Patterson having also made an argument and filed a brief on the same side, and one of the propositions urged by Patterson being the same before presented by Hartman, it would be difficult, I apprehend, even for the judge who decided the motion to analyze so nicely the operations of his own mind as to determine to what extent he was influenced by the argument of the one or the other. But if such an inquiry had been permissible, it was not attempted in this case. There was no effort to prove that, except for Patterson's argument, the motion would have been

decided otherwise than it was. The case, then, stands thus: Hartman stipulated to use his efforts as an attorney to procure a denial of the motion, on the result of which his right to a conveyance was to depend. He took the proper steps in that direction by making an oral argument and filing a brief; but under the belief that some further effort was necessary, the defendant, in Hartman's absence, retained another attorney, who also made an argument and filed a brief, and as the result of these briefs and arguments, the motion was denied; there being nothing, however, to show, or from which it can be inferred, that the result would not have been the same if the case had rested solely on the argument and brief of Hartman. We cannot assume that Hartman's efforts were ineffectual, and did not produce the desired result, unless that fact be affirmatively proved, and there was no such proof in the case. I am, therefore, of opinion that Hartman must be held to have performed the condition precedent, on the performance of which he was to become entitled to the conveyance.

But a decree for specific performance is always more or less within the discretion of the court; and it may either be refused if it be inequitable or against good conscience to enforce the contract, or it may be granted on such terms and subject to such conditions as may be just. If, therefore, Hartman, by any apparent neglect of the case during its progress, rendered it necessary for the defendant, as a prudent man, to employ other counsel to look after the case during Hartman's absence, justice demands that the latter should bear the necessary expense thus incurred, and that the defendant should have an equitable lien on the two leagues of land to secure his reimbursements. If the defendant shall deem it necessary to amend his answer, in order to present this point properly, he should be permitted to do so. But the amount paid to Patterson is not the criterion by which to determine the amount for which Hartman may be liable. He can only be held responsible for such sum as would have been sufficient to secure the services of a skillful and competent attorney to perform such services as he ought to have performed, but omitted to perform. If the defendant has paid Patterson more than a reasonable sum, Hartman is not liable for the excess.

The point that the contract cannot be enforced for lack of mutuality is untenable. The case in this respect comes fully within the principle decided in Hall v. Center [40 Cal. 63], at the October term, 1870.

The only remaining question is whether the contract is contra bonos mores and therefore void. If the defendant was in a position to raise this question, and if it had appeared that Hartman engaged to prosecute in the courts of the United States the defendant's claim to the land, with knowledge that the pretended grant was a forgery, and with the intent to conceal that fact from the court and the law officers of the government, it is clear that a court of equity would not lend its aid to enforce a contract so full of turpitude. But the defendant is estopped to aver that the grant under which he holds the land was a forgery. The final decree of confirmation is an adjudication that the grant was valid and genuine, and is conclusive of that fact, upon all persons whomsoever, in a collateral action, unless it be in respect to third persons holding under adverse grants, whose rights are preserved by the act of Congress of March 3, 1851. In a collateral action, even the government would not be permitted to go behind the decree of confirmation, for the purpose of showing that the grant was forged; and much less should the defendant, who is enjoying the fruits of the fraud, be allowed to do it. Of all persons, he is the least entitled to go behind his own final decree declaring the grant to be genuine, for the purpose of showing it to be fraudulent.

Judgment reversed and cause remanded for a new trial, in accordance with the principles announced in this opinion.

I concur: Sprague, J.

Wallace, J., being disqualified, did not sit in this case.

TEMPLE, J., Concurring.—I think the evidence clearly shows that Carr continued to recognize Hartman as his attorney, after the employment of Patterson, and permitted him to render services, knowing that Hartman supposed the contract was binding, and was the only mode provided for his compensation. I think this amounted to a waiver of full performance on the part of Hartman.

As to the defense that the contract was contra bonos mores, I see no evidence which tends to support it. The title had already been confirmed, and the grounds for supposing the grant a forgery had been laid before the court in an affidavit of the district attorney; and the question pending before the court was whether a new trial should be granted for that reason. I see nothing improper in the employment of counsel to resist such a motion. There is no evidence that any concealment was intended or attempted by Hartman. I, therefore, concur in the judgment.

I concur: Rhodes, C. J.